Filed 11/10/20  P. v. Moore CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076879 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 16CR016503) |
| KALEEM RAY MOORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Lisa M. Rogan, Judge.  Affirmed.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

This is the second appeal by defendant Kaleem Moore arising from his conviction on three counts of robbery (Pen. Code, § 211),[1] with attendant firearm-use enhancements (§ 12022.53, subd. (b)), which resulted in his being sentenced to 23 years eight months in prison (consisting of seven years for the robbery counts, and 16 years eight months for the firearm enhancements).  In his prior appeal, we rejected Moore's challenge to the validity of a search warrant, and affirmed his convictions.  (See *People v. Moore* (Jan. 24, 2019, D074567 [nonpub. opn.] (*Moore I*).)[2]  However, because the Legislature had since enacted Senate Bill No. 620, which amended section 12022.53, subdivision (h) to grant trial courts the discretion to strike or dismiss firearm enhancements when doing so furthers the interest of justice, we remanded with direction that the trial court consider whether to exercise its newly vested discretion.

This second appeal arises from the trial court's decision on remand not to strike or dismiss Moore's firearm enhancements.  Moore contends the trial court abused its discretion by (1) failing to consider all relevant factors, including Senate Bill No. 620's underlying purpose; (2) basing its decision on a mistaken recollection of the facts of the case; and (3) failing to consider whether to substitute a lesser firearm enhancement (rather than merely whether to dismiss the greater enhancements outright).  For reasons we will explain, we reject Moore's contentions and affirm.

---

[1]     Further undesignated statutory references are to the Penal Code.

[2]     We grant Moore's unopposed request to take judicial notice of our file in *Moore I, supra,* D074567.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

2

## FACTUAL AND PROCEDURAL BACKGROUND

### Original Trial and Sentencing[3]

"Moore and [and codefendant Mark] Smith were charged with three counts each of kidnapping to commit robbery (§ 209, subd. (b)(1)) and second degree robbery (§ 211), with firearm personal-use enhancement allegations (§ 12022.53, subd. (b)).[4]" (*Moore I, supra*, D074567, at p. 3, fn. omitted.)

***Prosecution Evidence***

"In the early morning hours of May 4, 2016, maintenance worker Ralph D. was working the overnight shift at a Walmart store in Victorville.  A female employee told him two men were in the women's restroom.  Ralph reported this information to two assistant managers (Ron R. and D.D.), who investigated but did not find anyone.  Ralph later saw two men in the middle of the store dressed in black and wearing neon green safety vests.  One of the men was wearing black and white 'Chuck Taylor' Converse shoes, and the other was wearing black 'Jordan' shoes.  The men's faces were not covered, and Ralph identified Smith at trial as one of the two men.  When Ralph asked the men what they were doing there, they said they were cleaning the floors.  Ralph 'immediately knew something was going on' because that was his responsibility that night.  Ralph calmly left to alert Ron and D.D. to the suspicious men's presence." (*Moore I, supra*, D074567, at pp. 3-4.)

---

3    We quote *Moore I* extensively in this section.

4    Section 12022.53, subdivision (b) provides:  "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), [which includes robbery,] personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years.  The firearm need not be operable or loaded for this enhancement to apply."

"In the meantime, the assistant managers were standing in the front of the store when the two suspects came around a corner toward them. The suspects wore hoodies, leaving only a portion of their faces showing. Nevertheless, at trial the managers identified Moore and Smith as the suspects. When one of the managers asked the men to remove their hoods and how he could help them, the suspects each pulled out a gun and said, '[t]his is how you can help us.' The suspects told the managers to take them to the 'CO,' or 'cash office,' and warned the managers not to 'try anything funny' because 'they know where it's at.' As the group walked toward the cash office, the suspects saw maintenance worker Ralph and told him, '[g]et over here, or I'm going to shoot your ass.' Ralph complied, and the five men then headed to the cash office, about 25 to 50 feet away." (*Moore I*, *supra*, D074567, at p. 4.)

"Assistant manager D.D. unlocked the door to the cash office, and the suspects told the employees to get on the floor. Due to limited space in the 'very tiny' cash office, Ralph laid down on the floor, Ron 'halfway laid down,' and the suspects had D.D. remain standing. The suspects asked D.D. to open the 'war wagon'—a heavy, rolling, locked cart into which 'money bags' of cash from the registers are deposited. The managers explained they did not have the keys to the war wagon on their key chains. One of the suspects escorted D.D. at gunpoint to another office about 400 feet away to retrieve the keys to the war wagon. While D.D. and the first suspect were gone, the suspect in the cash office spoke by walkie-talkie to the first suspect and to a third suspect." (*Moore I*, *supra*, D074567, at pp. 4-5.)

"D.D. returned with the keys, unlocked the war wagon, and helped place the money bags into pillowcases the suspects provided. The other suspect loaded up money bags that were already in the cash office. Once the

4

pillowcases were loaded, the suspects took the employees' cellphones and said they would leave them by the shopping carts at the store entrance. The suspects handcuffed D.D. to the war wagon and left. The suspects took approximately $80,000." (*Moore I*, *supra*, D074567, at p. 5.)

"As the suspects left the cash office, D.D. kicked the door closed so it would lock, then announced on his walkie-talkie for any employee listening to call 911. Ron called 911 from a landline inside the cash office. After 20 or 30 seconds, D.D. left the cash office still shackled to the war wagon, and observed a trail of money bags the suspects had dropped on their way out. He put them in the war wagon." (*Moore I*, *supra*, D074567, at p. 5.)

"Employee Justin A. was in his car in the parking lot on his lunch break when he heard the call for help on the walkie-talkie. Justin approached the store's open front door, saw the suspects approaching, and manually closed the sliding door. One of the suspects asked him, 'Do you want to get shot, homey?' Justin responded, 'Nope,' backed away, and ran back toward his car. Justin saw a gold Jeep with no license plates speed toward the store. The two suspects got in the Jeep, and it sped away. Justin called 911, and law enforcement arrived within minutes." (*Moore I*, *supra*, D074567, at p. 5.)

"Justin found the assistant managers inside the store and went to the hardware section to retrieve bolt-cutters to free D.D. from the war wagon. Justin then helped Ron look for his cellphone near the cart area, but they could not find the phone. Using Justin's cellphone, Ron tracked his own phone with a GPS locator 'app,' which located the device several miles away. Justin showed his phone to one of the responding sheriff's deputies, who had Justin accompany him in a sheriff's vehicle to locate the missing phone." (*Moore I*, *supra*, D074567, at pp. 5-6.)

"The locator app led Justin and the deputy to an apartment complex . . . about three freeway exits away from the Walmart." (*Moore I, supra*, D074567, at p. 6.)  After helping deputies search, "Justin saw a gold Jeep with no license plates, which he recognized '[r]ight away' as the suspects' getaway vehicle." (*Ibid*.)  Deputies observed indicia that the Jeep had recently been driven and hastily parked. (*Ibid*.)  They followed distinctive Chuck Taylor Converse shoeprints to an apartment unit, established a perimeter, and attempted to make contact with the occupants. (*Id.* at pp. 6-7.)  After about two hours, Moore, Smith, and a third occupant exited the apartment. (*Id.* at p. 7.)

"After obtaining a search warrant . . . , law enforcement searched [the apartment] and found the following evidence:  one pair of Chuck Taylor Converse shoes (size five and a half) and one pair of 'Jordan Retro 11[]' shoes; two black handguns (one hidden in the tank of a toilet, the other in a safe); one neon vest; one pair of red, black, and gray gloves matching those seen in Walmart's surveillance footage of the robbery; one pair of blue gloves; a keychain with a Jeep Commander key on it; 25 money bags located between the coffee table and couch; eight money bags containing coins; a bag full of Walmart receipts; a large amount of currency stacked on the coffee table; additional currency wrapped in a sheet partially hanging from an attic access point; additional currency between the mattress and box spring of the bed in the master bedroom; and a Walmart paystub addressed to Moore.  Excluding coins and checks, law enforcement recovered approximately $60,000 in currency from the apartment." (*Moore I, supra*, D074567, at pp. 7-8, fn. omitted.)

"In addition to testimony from the Walmart and law enforcement witnesses, the prosecution presented extensive video surveillance footage from the Walmart store." (*Moore I, supra,* D074567, at p. 8.)

### *Defense Evidence*

"Neither Moore nor Smith testified or presented any other affirmative evidence. In closing, Moore's counsel essentially conceded the robbery counts, but argued there was insufficient asportation to support the kidnapping counts, which carry a life sentence. (§ 209, subd. (b)(1).) Smith argued in closing that he had been misidentified by the victims." (*Moore I, supra,* D074567, at p. 8, fn. omitted.)

### *Verdicts and Sentencing*

"The jury found Moore and Smith not guilty of the three kidnapping counts, and guilty of the three robbery counts. The jury also found true the firearm-use allegation attached to each robbery count." (*Moore I, supra,* D074567, at p. 8.)

"The trial court sentenced each defendant to 23 years eight months in prison, consisting of the following consecutive terms: a five-year principal term for the first robbery count (the aggravated term on a 2/3/5-year triad under § 213, subd. (a)(2)); two 1-year subordinate terms for the remaining robbery convictions (one-third of the three-year middle term); a 10-year term on the firearm-use enhancement attached to the principal robbery count; and two additional three-year four-month terms for the firearm-use enhancements attached to the subordinate robbery counts (one-third of each 10-year enhancement)." (*Moore I, supra,* D074567, at pp. 8-9.)

### Moore's Previous Appeal

Moore appealed, raising two issues. First, he challenged the trial court's denial of his motion to quash the search warrant and to suppress the

resulting evidence. We affirmed the trial court's order. (*Moore I, supra,* D074567, at pp. 9-18, 30-31.)

Second, Moore requested that we remand for resentencing. When the trial court sentenced Moore, section 12022.53, subdivision (h) prohibited the court from striking the firearm enhancements. (§ 12022.53, former subd. (h) ["the court *shall not* strike an allegation under this section"], italics added.) While his appeal was pending, however, the Legislature amended this subdivision to provide that "[t]he court *may*, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h), italics added; see § 1385, subd. (a) ["The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."].) We concluded this amendment applied retroactively to Moore's nonfinal judgment, vacated his sentence, and remanded for the trial court to exercise its newly vested discretion to determine whether to strike the firearm enhancements attached to each robbery conviction. (*Moore I, supra,* D074567, at pp. 30-31.) "We express[ed] no opinion on how the trial court should exercise its discretion in this regard." (*Id.* at p. 30.)

## Proceedings on Remand

On remand, Moore filed an informal request that the trial court dismiss the firearm enhancements.[5] The sole basis for the motion was Moore's assertion that "[s]ince he has been in custody, he has been an exemplary

---

[5] Although the express language of section 1385, subdivision (a) does not grant defendants the right to file a formal motion, it "is settled . . . that a defendant may 'informally suggest' that the magistrate consider dismissal on the magistrate's own motion." (*People v. Konow* (2004) 32 Cal.4th 995, 1022.) We will refer to Moore's request colloquially as a motion.

inmate."  He attached to his request several positive write-ups provided by prison officials, and a list showing the classes he had taken while incarcerated.

Moore attended the hearing on his motion, represented by a deputy public defender who was filling in for his regular deputy public defender who had filed the motion.  The trial court stated it had "received and . . . read the motion," and invited further comment.  Moore's counsel stated she "would submit on the motion," unless the court required further argument, in which case she would need to request a continuance so Moore's usual counsel could appear and argue.  For his part, the prosecutor argued "there [was] not a sufficient reason to strike the enhancements."

The trial court denied Moore's motion, explaining:

> "All right.  And the Court was the trial court for the trial.
>
> "The facts in this case were extensive in the use, and typically a use can be a wide variety of things when dealing with a gun, but in this particular case, it was very highly-sophisticated planning, and the use was extensive, and it involved numerous victims who at varying degrees or times during the incident, it was a long incident where a Wal-Mart was taken over after hours.
>
> "Mr. Moore had prior experience with Wal-Mart due to his employment.  They knew the layout.
>
> "Mr. Moore actually at one point cocked the handgun and put it at the head of one of the victims.
>
> "One of the victims was handcuffed to what they called 'a war wagon,' which was a cash cart.
>
> "They were locked in a small room.
>
> "All of the victims' phones were taken from them.
>
> "The gun use was extensive.

9

"At this time the Court, in recalling all of those factors in the planning, the sophistication, the victims being at a very vulnerable point, being that they are taken to a small room, their phones were taken away from them, their guns were pointed at them, they were told they would be shot if they looked at the defendants during this time, the Court is not going to strike the use.

"If this were something as simple as they just brandished without any of those aggravating factors, it would be a case more likely that the Court would exercise some discretion in striking, but because of the fact pattern that was involved here, I am not going to strike that.

"So the sentencing as previously imposed by the Court will remain as stands."

The prosecutor and deputy public defender each thanked the court, and the hearing ended.

## DISCUSSION

Moore contends the trial court abused its discretion by denying his motion to dismiss the firearm-use enhancements. Specifically, he contends the court erred by (1) failing to consider all relevant factors, including Senate Bill No. 620's underlying purpose; (2) basing its decision on a mistaken recollection of the facts of the case; and (3) failing to consider whether to substitute a lesser firearm enhancement (rather than merely whether to dismiss the greater enhancements outright).

Moore did not raise any of these challenges in the trial court, which would ordinarily forfeit them on appeal. (See *People v. Gonzalez* (2003) 31 Cal.4th 745, 751 (*Gonzalez*) ["A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial."], quoting *People v. Scott* (1994) 9 Cal.4th 331, 353.) However, under the particular circumstances of this case, which included a very brief hearing

10

at which Moore was represented by substitute counsel who conveyed her unfamiliarity with the case and potential need for a continuance, we decline to declare a forfeiture as to Moore's claims regarding the trial court's consideration of relevant factors and factual recollection. But because Moore's claim regarding substitution of a lesser firearm enhancement presents a legal question that his regular public defender could have raised when he filed the motion on Moore's behalf, we explain in part IV, *post*, why we find this challenge forfeited.

## I. *Legal Principles*

Under section 12022.53, subdivision (b), a defendant who personally uses a firearm during the commission of certain specified felonies—including robbery (§ 12022.53, subd. (a)(4))—"shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years." (§ 12022.53, subd. (b).)[6] Senate Bill No. 620 amended 12022.53, subdivision (h), effective January 1, 2018, to grant trial courts the discretion "in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); Stats. 2017, ch. 682, § 1.)

"The factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a

---

[6]  Section 12022.53 provides a three-tiered enhancement based on the nature of the defendant's firearm use during the commission of an enumerated offense:  subdivision (b) provides for a 10-year enhancement for personally *using* a firearm; subdivision (c) provides for a 20-year enhancement for personally *discharging* a firearm; and subdivision (d) provides for a 25 to life enhancement for personally *discharging* a firearm *causing great bodily injury or death*.

sentence in the first instance." (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*).) These include the general objectives in sentencing (Cal. Rules of Court, rule 4.410),[7] circumstances in aggravation (rule 4.421), and circumstances in mitigation (rule 4.423). (See *Pearson*, at p. 117.) " '[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court." (*Ibid.,* quoting rule 4.409.) The fact that a court expressly discusses certain factors does not affirmatively reflect that it failed to consider others. (See *People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*) ["the fact that the court focused its explanatory comments on the violence and potential violence of appellant's crimes does not mean that it considered only that factor"].)

" '[A] court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is' reviewable for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 373; see *Pearson*, *supra*, 38 Cal.App.5th at p. 116.) The burden is on the party attacking the sentence " ' "to clearly show that the sentencing decision was irrational or arbitrary." ' " (*Carmony*, at p. 376.)

## II. *Consideration of All Relevant Factors*

Moore contends the trial court abused its discretion by failing to consider all relevant factors, such as (1) the "underlying purpose" of Senate Bill No. 620, (2) Moore's individual characteristics (e.g., his age, minimal criminal record, and conduct in prison), and (3) the fact the court cited certain of the same aggravating factors in denying Moore's motion as it had relied on in imposing the upper term and running sentences consecutively. This

---

7    All further rule references are to the California Rules of Court.

challenge fails because the trial court's stated rationale affirmatively reflects that the court expressly considered various applicable sentencing factors.

Specifically, in addition to aggravating circumstances directly arising from Moore's extensive firearm use, the court cited the following aggravating circumstances: (1) the crime reflected "very highly-sophisticated planning" (see rule 4.421(a)(8) ["[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism"]); (2) "the victims [were] at a very vulnerable point, being that they are taken to a small room, their phones were taken away from them, . . . guns were pointed at them, [and] they were told they would be shot if they looked at the defendants during this time" (see rule 4.421(a)(3) ["[t]he victim was particularly vulnerable"]); and (3) "Moore had prior experience with Wal-Mart due to his employment" (see rule 4.421(a)(11) ["[t]he defendant took advantage of a position of trust or confidence to commit the offense"]). Additionally, at the original sentencing hearing, the trial court also found that the theft of $60,000 implicated the aggravating circumstance that the "crime involved an . . . actual taking . . . of great monetary value." (Rule 4.421(a)(8).)

Moore infers from the fact that the trial court expressly mentioned only aggravating circumstances that the court must not have considered any mitigating circumstances. The law precludes the drawing of such an inference, however, unless the record affirmatively reflects the court failed to consider mitigating circumstances. (See rule 4.409; *Pearson, supra*, 38 Cal.App.5th at p.117; *Myers, supra*, 69 Cal.App.4th at p. 310.) The record here does not.

To support his claim that the record affirmatively shows the trial court failed to consider the underlying ameliorative purpose of Senate Bill No. 620, Moore cites the court's suggestion that it would have been more inclined to

13

strike the enhancements "[i]f this were something as simple as they just brandished without any of those aggravating factors." Moore claims this shows the trial court mistakenly construed Senate Bill No. 620 as authorizing the court to strike firearm enhancements *only* in cases involving "simple brandish[ing]." To the contrary, by acknowledging that firearm use "can be a wide variety of things," the trial court's reference to simple brandishing clearly was intended to demarcate the lower end of the firearm-use continuum. By then articulating the numerous aggravating circumstances the court found applicable, the court conveyed its view that Moore's firearm use fell at the upper end of the use continuum.[8] In this context, the court's reference to simple brandishing did not reflect a misunderstanding that the court lacked the authority to dismiss the enhancements; it reflected the court's judgment that it would be inappropriate to do so in this case.

Moreover, although Moore emphasizes that Senate Bill No. 620 is part of a trend "against draconian sentencing measures in the state of California," his brief's "eloquent and elegant argument about trends in felony sentencing . . . ignores the context in which sentencing decisions like the one at issue here will typically be made. The factors that the trial court must consider when determining whether to strike a firearm enhancement under section 12022.53, subdivision (h) are the same factors the trial court must consider when handing down a sentence in the first instance." (*Pearson*, *supra*, 38 Cal.App.5th at p. 117.)

As to consideration of his individual characteristics (e.g., his age, relatively minor criminal record, and conduct in prison), Moore argues that because the trial court did not expressly discuss them, the record therefore

---

[8] The firearm-*use* continuum is bounded at the upper end by the 20-year enhancement for *discharging* a firearm. (§ 12022.53, subd. (c).)

reflects that the court did not consider them. The law presumes the contrary. (See rule 4.409; rule 4.423 [setting forth mitigating circumstances "relating to the defendant"]; *Pearson, supra*, 38 Cal.App.5th at p. 117; *Myers, supra*, 69 Cal.App.4th at p. 310.) Moreover, by stating that it had received and reviewed Moore's motion, which was based solely on his conduct in prison, the trial court implicitly indicated it had considered at least this individualized characteristic.

Regarding aggravating circumstances, Moore does *not* contend the trial court failed to articulate a sufficient number of them to support each of its discretionary sentencing decisions. Rather, he contends that in denying his motion to strike the firearm enhancements based on certain aggravating factors, the court "failed to take into consideration the manner in which it already considered" the same aggravating factors "at the original sentencing hearing to impose both the aggravated term and consecutive terms." We will not presume the court was unfamiliar with its earlier actions. (See *People v. Connolly* (1951) 103 Cal.App.2d 245, 248 ["This court will not presume that the trial court was not familiar with the record when passing on defendant's application for probation."]; *Pearson, supra*, 38 Cal.App.5th at p. 117 [unless the record affirmatively reflects otherwise, we presume the court considered all relevant factors].)

In sum, Moore has not shown that the trial court failed to consider all relevant factors.

### III. *Mistaken Recollections of Fact*

Moore also contends the trial court abused its discretion because its ruling was based on two mistaken recollections of fact—that Moore (rather than Smith) "cocked [a] handgun and put it at the head of one of the victims," and by characterizing the robbery as "a long incident." We disagree.

15

While not seriously disputing that the trial court was mistaken about which codefendant cocked his gun, the Attorney General maintains the trial court was nonetheless correct that Moore's overall firearm use was "extensive." We agree. Indeed, even Moore himself acknowledges "there is no dispute that both [he] and Smith were armed with firearms and pointed the guns at the victims . . . ." Thus, even if the trial court was mistaken about one instance of Moore's firearm use, the overall proposition on which the trial court based its ruling was admittedly correct. Moreover, the trial court cited numerous additional aggravating circumstances apart from Moore's firearm use. (See Discussion part II, *ante*.)

Moore fares no better with his contention that the trial court erroneously recalled that the robbery "was a long incident." As Moore admits, he and Smith were in the store for a total of nearly four hours (from about 11 p.m. to about 2:45 a.m.). That certainly qualifies as a long incident.

Even if we were to construe the "incident" as referring only to the approximately nine-minute portion during which the actual robbery occurred, we cannot say the trial court was mistaken. Indeed, the trial court's recounting of the events that transpired during those nine minutes— extensive firearm use, moving multiple victims to different locations in the store, locking them in a small room, shackling one of them to the cash cart, taking their phones, and threatening another employee while fleeing the store—provides context against which to evaluate the court's comment. So framed, the trial court did not abuse its discretion by basing its ruling on the belief that the robbery "was a long incident."

## IV. *Substituting a Lesser Enhancement*

Moore argues that even if we conclude (as we have) that the trial court did not abuse its discretion in declining to *dismiss* the firearm enhancements,

16

we must nonetheless remand for resentencing because the trial court "was unaware of its discretion to *reduce* the section 12022.53, subdivision (b) [10-year] enhancement to the lesser included [three-, four-, or 10-year] enhancement set forth in section 12022.5."[9] (Italics added.) The Courts of Appeal disagree about whether trial courts have such discretion, and the issue is pending in the Supreme Court. (See, e.g., *People v. Morrison* (2019) 34 Cal.App.5th 217, 223 (*Morrison*) [courts have discretion to substitute lesser enhancements]; *People v. Tirado* (2019) 38 Cal.App.5th 637, 643-644 [courts lack the discretion to substitute lesser enhancements], review granted November 13, 2019, S257658.) We do not reach the merits of Moore's challenge because we conclude he forfeited it by failing to first raise it in the trial court. (*Gonzalez, supra*, 31 Cal.4th at p. 751; see *People v. Yanez* (2020) 44 Cal.App.5th 452, 460 [applying the forfeiture doctrine to the same claim at issue here], review granted Apr. 22, 2020, S260819 (*Yanez*).)

Moore filed his motion in October 2018. By then, Senate Bill No. 620 had been in effect for 10 months, and the *Morrison* decision—on which Moore bases his appellate challenge—had been published for six months. Yet, Moore requested only that the trial court *dismiss* his firearm enhancements; he did not request that the trial court *reduce* them. By failing to first seek in the trial court relief he now claims was authorized by then-existing authority (the validity of which claim we do not address here), Moore has forfeited his

---

9       Section 12022.5, subdivision (a) provides: "Except as provided in subdivision (b) [pertaining to assault weapons and machineguns], any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." Section 12022.5 applies to *any* felony, whereas section 12022.53 applies only to certain enumerated felonies.

17

ability to seek that relief on appeal. (See *Yanez, supra*, 44 Cal.App.5th at p. 460, review granted.) Forfeiture is all the more appropriate here in light of the *Morrison* court's admonition that publication of its decision essentially put defendants on notice of the need to affirmatively raise the issue in the trial court. (*Morrison, supra*, 34 Cal.App.5th at p. 225 ["after the publication of our decision today, the usual presumption that a sentencing court correctly applied the law will apply and will ordinarily prevent remand where the record is silent as to the scope of a court's discretion"].)

## DISPOSITION

The judgment is affirmed.

HALLER, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.